TORYS LLP

1114 Avenue of the Americas, 23rd Floor
New York, New York 10036.7703
P. 212.880.6000 | F. 212.682.0200

www.torys.com

Erica Goldman
egoldman@torys.com
P. 212.880.6027

June 15, 2026

**VIA ECF**

Hon. Ona T. Wang
United States District Court
Southern District of New York
500 Pearl Street
New York, New York 10007

**Re: Request for Premotion Discovery Conference**
***System1 OpCo, LLC v. Sunday Market Media Inc., et al.***
**Case No. 26-CV-01187**

Dear Judge Wang:

We act for Plaintiff System1 OpCo, LLC ("System1" or "Plaintiff") in the above-referenced action. Under Section IV.b. of Your Honor's Individual Practices and Local Civil Rule 37.2, I write to respectfully request a conference about the discovery dispute set forth in detail below.

I met and conferred with counsel for Defendants on June 5, 2026 by telephone, but the parties were unable to resolve their dispute.

## I. Introduction

This is an action by System1 against Sunday Market Media Inc. ("Sunday Market") and Ring of Media LLC ("Ring" and together with Sunday Market, "Defendants") for breach of contract and promissory fraud, among other claims. The parties entered agreements for digital marketing services performed by System1 for Sunday Market and Ring. System1 performed its contractual services but has not been paid for any of the services it performed between October 2025 and January 2026. While pleading motions remain outstanding, Defendants delivered document demands, a deposition notice, and a third-party notice of subpoena to Google for documents (the "Subpoena"). This dispute focuses on the Subpoena. It contains two requests for documents ("Request One" and "Request Two"). The Subpoena must be modified to strike Request Two because that request creates an undue burden— Request Two is not particularized, is overbroad, and seeks documents that are entirely irrelevant to the parties' claims and defenses.

## II. Factual Background

On or about October 15, 2024, Sunday Market and System1 entered a Services Agreement, with Standard Terms and Conditions and a list of Company Websites, annexed thereto as Schedules 1 and 2, respectively (the "Sunday Agreement"). Compl. ¶ 13. On or about October 30, 2025, Ring and System1 entered a Services Agreement, with Standard Terms and Conditions and

Schedules 1 and 2 (the "Ring Agreement" and, together with the Sunday Agreement, the "Agreements"). *Id.* ¶ 65.

Under the respective Agreements, System1 agreed to provide Sunday Market and Ring with "Services," defined as: (1) Ad Serving Technology Services; (2) Account Management Services (Exclusive); (3) Content Creation & Website Development Services; (4) Revenue Reporting Services; and (5) Webhosting Services. *Id.* ¶¶ 15, 67.

System1 agreed to provide Sunday Market and Ring with the Services in exchange for a fee share arrangement. *Id.* ¶ 21. Sections 2(d) and 8(a) of the Agreements provide that after each calendar month, Google pays Sunday Market or Ring, as applicable, the amounts payable for Search Revenue generated through the Services that System1 performed for each of Sunday Market and Ring during the preceding month with respect to each of the identified Company Websites/Subdomains (the "Google Monthly Payments"). *Id.* ¶ 24.

On or about October 31, 2025, November 30, 2025, and December 31, 2025, System1 sent Sunday Market invoices for fees associated with the Services it performed for Sunday Market for October-December 2025, for $3,576,716.39, $3,735,694.22, and $193,586.83, respectively. To date, these invoices remain unpaid. *Id.* ¶ 58.

On or about January 18, 2026, System1 sent Ring invoices dated November 30, 2025, and December 31, 2025, for the fees associated with the Services it performed for Ring for November and December 2025, for $26,427.38 and $21,218.77, respectively. To date, these invoices also remain unpaid. *Id.* ¶ 68.

## III. Procedural Posture

System1 filed its First Amended Complaint on April 15, 2026, with nine causes of action against Sunday Market and Ring for breach of contract, breach of the implied duty of good faith and fair dealing, unjust enrichment, and promissory fraud. *See* Compl. Defendants answered the Complaint and Sunday Market counterclaimed against System1. Dkt. 31. Defendants also moved to dismiss some of System1's claims. Dkt. 29. System1 answered the counterclaim, opposed the motion to dismiss, and cross-moved for leave to amend. Dkt. 35-37.

As potentially relevant to this letter, Sunday Market's counterclaim alleged, in part, that System1 violated Google's policies about the use of "inauthentic traffic" to perform the Services for Sunday Market. Sunday Market also alleged that System1 had other partners for whom it provided services akin to the Services under the Agreements. When System1 allegedly lost those partnerships due to the violations of Google's policies, it increased the traffic on the Sunday Market Domains, which caused Google to restrict Sunday Market's Google account, and revoke its account status, rendering the Domains worthless. Dkt. 35 ¶¶ 32-60.

Plaintiff denied these allegations except admitted that it had other web publishing partnerships similar to the Services it performed under the Sunday Agreement. It also admitted that Google imposed new policies governing the Google AdSense program in the second half of 2025, and conditioned access to certain AdSense account features on compliance with new policy effective August 25, 2025. *Id.* ¶¶ 36, 39, 40.

On June 4, 2026, Defendants served a Notice of Subpoena directed to third party Google LLC. The Subpoena contains two requests for production:

1. All of your Trust and Safety and/or Invalid Traffic logs concerning the Domains.
2. All of your Trust and Safety and/or Invalid Traffic logs concerning System1 OpCo, LLC; any persons or entities known or believed by you to be System1 Affiliates; and any domains known or believed by you to be managed, administered, controlled, or owned by System1 OpCo, LLC or System1 Affiliates.

System 1 seeks to modify the Subpoena.

## IV. <u>Legal Standard</u>

Rule 45 requires the Court to quash or modify a subpoena that subjects a person to "undue burden." Fed. R. Civ. P. 45(d)(3)(iv). Whether a subpoena imposes an "undue burden" "depends upon 'such factors as relevance, the need of the party for the documents, the breadth of the document, the time period covered by it, the particularity with which the documents are described and the burden imposed." *Concord Boat Corp. v. Brunswick Corp.*, 169 F.R.D. 44, 49 (S.D.N.Y. 1996).

"[A] party's requests under a Rule 45 subpoena are cabined by Rule 26(b), which limits discovery to information that is both relevant and proportional to the needs of the case." *Delgado v. Donald J. Trump for President, Inc.*, Case No. 19-CV-11764 (AT) (KHP), 2024 WL 3730499 at *2 (S.D.N.Y. May 13, 2024); *Salvatore Studios Int'l v. Mako's Inc.*, No. 01 Civ. 4430, 2001 WL 913945, at *1 (S.D.N.Y. Aug. 14, 2001).

While the concept of relevance in discovery is broad, it is not without limits. *Brunckhorst v. Bischoff*, Case No. 21 Civ. 4362 (JPC), 2023 WL 3090950, at *3 (S.D.N.Y. Apr. 26, 2023). Where the discovery sought "is not sufficiently relevant to the claims or defenses at issue in [the suit] so as to justify its production" courts routinely quash or modify subpoenas on the grounds that the moving party has adequately demonstrated undue burden. *Breaking Media, Inc. v. Jowers*, Case No. 21 Misc. 194 (KPF), 2021 WL 1299108, at *6-7 (S.D.N.Y. Apr. 7, 2021).

## V. <u>Legal Argument</u>

Fed. R. Civ. P. 26 and 45 require the Court to modify the Subpoena because Request Two imposes an "undue burden". *First*, the capitalized terms "Trust and Safety" and "Invalid Traffic logs" are not defined in the definitions section of the Subpoena. There is no specific information in the Subpoena from which Google (or anyone) can deduce what documents might be responsive to the request. Because Request Two is not particularized, it should be stricken. *See Facteau v. City of Mount Vernon*, Case No. 23 Civ. 09173 (KMK)(JCM), 2025 WL 2391410, at *5 (S.D.N.Y. Aug. 15, 2025).

*Second*, Request Two seeks "any" and "all" documents relating to the undefined terms in respect of System1 and "any" of its "Affiliates" and in further respect of "any" "domains" known or believed by Google to be managed, administered, controlled, or owned by System1 or its "Affiliates". "System1 Affiliates" is defined in the Subpoena to include "officers, directors, employees, partners, corporate parent(s), subsidiaries, or affiliates of System1 OpCo, LLC." The Subpoena also instructs that "the terms 'all,' 'any,' and 'each' must be construed as encompassing any and all" which requires modification on this ground alone. *E.g., Delgado*, 2024 WL 3730499, at *3.

*Finally*, Request Two is not relevant to the claims and defenses at issue and so is not proportionate to the needs of the case. The terms "Trust and Safety logs" and "Invalid Traffic logs" do not appear anywhere in Defendants' pleading. Even if they did, there is nothing in the pleadings to explain how or why such logs relating to domains managed, controlled or owned by System1 in respect of unknown and unlimited third parties with whom System1 may or may not have distinct, confidential agreements, could possibly have anything to do with the agreements central to this dispute or the interactions between Defendants and System1. Whether those logs may exist vis à vis domains that are neither included in the definition of "Domains" set forth in the Subpoena nor Defendants' pleadings, does not in any way make it more or less likely that the allegations in Defendants' pleadings relating to the Domains subject to the Sunday Agreement are even true as between the parties to this proceeding. *Salvatore Studios Int'l*, 2001 WL 913945, at *1.

For the foregoing reasons, Plaintiff seeks a premotion discovery conference.

Respectfully,



Erica R. S. Goldman

cc: Casey D. Laffey, Reed Smith LLP (via ECF)
John Kennedy, Reed Smith LLP (via ECF)
Allison Kahn, Reed Smith LLP (via ECF)