ReedSmith
Driving progress
through partnership
**Casey D. Laffey**
Direct Phone: +1 212 549 0389
Email: claffey@reedsmith.com

Reed Smith LLP
599 Lexington Avenue
New York, NY 10022-7650
+1 212 521 5400
Fax +1 212 521 5450
reedsmith.com

June 18, 2026

**Via ECF**

Hon. Ona T. Wang
United States District Court
Southern District of New York
500 Pearl Street
New York, NY 10007

**Re: *System1 OpCo, LLC v. Sunday Market Media Inc.*, No. 1:26-CV-1187 (S.D.N.Y.)**
**Response to Plaintiff's June 15, 2026 Pre-Motion Letter**

Dear Judge Wang:

The undersigned is counsel for defendant-counterclaimant Sunday Market Media Inc. ("Sunday Market") and defendant Ring of Media, LLC ("Ring") (together, "Defendants") in this action. Defendants here respond to the letter-motion filed on June 15, 2026 (Dkt. 52) by plaintiff and counterclaim-defendant System1 OpCo, LLC ("Plaintiff"), concerning Plaintiff's request to partially quash a subpoena duces tecum that Defendants recently served on Google LLC (the "Subpoena").

Defendants respectfully submit that Plaintiff's request for relief is meritless, and should be denied without a conference or full briefing.

**<u>Factual Background</u>**

The following focuses on the context underlying the Subpoena, and is not a complete description of all of the parties' claims and defenses.

Though Plaintiff filed suit first, Defendants are the true injured party and claimant here. Sunday Market's counterclaim for $50 million in damages, due to destroyed asset value caused by Plaintiff's deliberate misconduct, dwarfs Plaintiff's claims for unpaid invoices. Indeed, Plaintiff's claims are based on Defendants' valid withholding of payment as a setoff, after Plaintiff's misconduct came to light.

This action arises out of the contractual relationship between Plaintiff and Defendants in connection with website advertising. On October 15, 2024, Sunday Market and Plaintiff entered into a services agreement, whereby Plaintiff would administer specific internet domains owned by Sunday Market (the "Domains") in exchange for a share of the revenue generated by such administration. Dkt. 31 (Defendants' Answer with Counterclaims) at ¶¶ 27-35.[1] The reason the Domains were an attractive business prospect in the first place, and the basis for Plaintiff's administration of them to generate revenue,

[1] Paragraph citations to Defendants' Answer with Counterclaims refer to the relevant paragraph in Defendants' Counterclaims, beginning on page 66 of Dkt. 31, rather than to Defendants' answer to Plaintiff's allegations.

was that Sunday Market had developed a privileged revenue-sharing relationship with Google, a major player in the online advertising space, concerning the Domains. *Id.* at ¶¶ 18-26. Sunday Market's administration of the Domains was similar to other arrangements Plaintiff had with web publishing companies akin to Sunday Market. *Id.* at ¶ 36.

In the second half of 2025, Google imposed stricter policies cracking down on inauthentic website traffic, generated by "bots" and other automatic means. *Id.* at ¶¶ 39-44. Not long thereafter, traffic to the Domains abruptly skyrocketed, beginning on or around November 21, 2025. *Id.* at ¶¶ 47-49. Google immediately flagged this suspicious activity, including expressly highlighting a dramatic increase in "click spam." *Id.* at ¶¶ 50-51. Upon information and belief, this took place after many of Plaintiff's similar relationships with other third parties had been shut down by Google because of Plaintiff's failure to adhere to Google's new policies against inauthentic traffic. *Id*. at ¶ 45.

In sum, Defendants have alleged that Plaintiff—in response to the shutdown of its other ventures—abruptly flooded the Domains with inauthentic traffic in late November 2025; and that Google promptly noticed and responded, ending the Domains' privileged relationship with Google and thereby destroying the Domains' marketable value as assets. *Id.* ¶¶ 46, 50-60. Sunday Market's counterclaims against Plaintiff arise out of these facts.

On June 4, 2026, Defendants served the Subpoena on Google LLC. It contained two document requests:

1. All of your Trust and Safety and/or Invalid Traffic logs concerning the Domains.
2. All of your Trust and Safety and/or Invalid Traffic logs concerning System1 OpCo, LLC; any persons or entities known or believed by you to be System1 Affiliates; and any domains known or believed by you to be managed, administered, controlled, or owned by System1 OpCo, LLC or System1 Affiliates.

System1 Affiliates is defined in the Subpoena to mean "officers, directors, employees, partners, corporate parent(s), subsidiaries, or affiliates of System1 OpCo, LLC."

**<u>Legal Argument</u>**

Per the broad scope of discovery set by Fed. R. Civ. P. 26(b)(1), absent court-ordered limitation, parties are entitled to obtain discovery "regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case[.]" This Court has repeatedly advised that relevance "is an extremely broad concept" and presents a "relatively low threshold" to justify discovery. *John Wiley & Sons, Inc. v. Book Dog Books, LLC*, 298 F.R.D. 184, 186 (S.D.N.Y. 2014); *see also Sadis & Goldberg, LLP v. Banerjee*, 2019 U.S. Dist. LEXIS 144654, at *3 (S.D.N.Y. Aug. 26, 2019) ("Relevance is to be 'construed broadly to encompass any matter that bears on, <u>or that reasonably could lead to</u> other matter that could bear on' any party's claim or defense.") (emphasis added) (quoting *State Farm Mut. Auto. Ins. Co. v. Fayda*, 2015 U.S. Dist. LEXIS 162164, at *7 (S.D.N.Y. Dec. 3, 2015)). The same broad standard of relevance applies to a Rule 45 subpoena addressed to a third party. *In re Refco Secs. Litig.*, 759 F.Supp.2d 342, 345 (S.D.N.Y. 2011). Further, the movant seeking to limit discovery bears the burden of persuasion. *See*, *e.g.*, *Delta Air Lines, Inc. v. Lightstone Grp., LLC*, 2021 U.S. Dist. LEXIS 98798, at *5 (S.D.N.Y. May 24, 2021) (Wang, J.) (quoting *Fireman's Fund Ins. Co. v. Great Am. Ins. Co. of N.Y.*, 284 F.R.D. 132, 135 (S.D.N.Y. 2012)); *John Wiley*, 298 F.R.D. at 186.

ReedSmith

In sum, Plaintiff bears a demanding burden in opposing the Subpoena. Applying these standards, Plaintiff's challenges to the Subpoena's second request ("Request Two") fail.

First, Plaintiff explicitly frames its argument against Request Two in terms of undue burden. *See* Dkt. 52 at 3. But as this Court has repeatedly held, only Google, as the target of the Subpoena, can raise the issue. Plaintiff has no standing to raise undue burden. *See*, *e.g.*, *FCX Solar, LLC v. FTC Solar, Inc.*, 2022 U.S. Dist. LEXIS 123223, at *3-6 (S.D.N.Y. July 12, 2022); *Malibu Media, LLC v. Doe*, 2018 U.S. Dist. LEXIS 194193, at *7-8 (S.D.N.Y. Nov. 14, 2018). Plaintiff's challenges fail for this reason alone.

The same principle would defeat Plaintiff's more specific arguments as to why undue burden exists here, although there is no need to reach them. For instance, Plaintiff argues that the terms "Trust and Safety" and "Invalid Traffic logs" are not defined in the Subpoena, and thus Request Two does not sufficiently identify the material sought. But it is for Google to determine whether the Subpoena is clear, and to raise the issue if Google believes it is not—and Google has not done so. This is to be expected, since both "Trust and Safety" and "Invalid Traffic" are well-understood terms in this context. *See*, *e.g.*, *In re Google Digit. Advert. Antitrust Litig.*, 2025 U.S. Dist. LEXIS 257680, at *96-97 (S.D.N.Y. Dec. 12, 2025); *Bulletin Mktg. LLC v. Google LLC*, 2018 U.S. Dist. LEXIS 217106, at *2-3 (N.D. Cal. Dec. 21, 2018).

Likewise, Plaintiff takes issue with Request Two's wording: its request for "all" responsive documents and the Subpoena's instruction that 'all' "must . . . be construed as encompassing any and all[,]" citing *Delgado v. Donald J. Trump for President, Inc.,* 2024 U.S. Dist. LEXIS 142572 (S.D.N.Y. May 13, 2024). But again, it is for Google to determine if it can comply with the Subpoena, and to meet and confer with Defendants if Google believes it cannot. Google has not done so. Furthermore, the instruction Plaintiff criticizes is mandated by Local Civil Rule 26.3(d)(1); and *Delgado* is distinguishable, as in that case the entity served with the subpoena (Fox) objected to burden, the subpoena asked for "all documents and communications" concerning the plaintiff in any way, and there was no reason to believe Fox had any relevant information.

Second, contrary to Plaintiff's objections, Request Two seeks materials that are indisputably relevant. It is well within the scope of Rule 26 to inquire into Plaintiff's activities <u>outside</u> the scope of the parties' contract, to inform Sunday Market's allegations about Plaintiff's misconduct <u>within</u> the scope of the contract. *See Adomni, Inc. v. Ct. Media, LLC*, 2024 U.S. Dist. LEXIS 210340 (S.D.N.Y. Nov. 19, 2024). More specifically, the central premise of Sunday Market's counterclaims is that Plaintiff destroyed the value of the Domains by routing inauthentic, bot-driven traffic through them in late November 2025. Dkt. 31 at ¶¶ 37-60. Sunday Market expressly alleged that Plaintiff had relationships with other companies, similar to its administration of the Domains (¶ 36), and that Plaintiff's use of inauthentic traffic on the Domains followed directly after Plaintiff's similar behavior in those other relationships led to detection by Google (¶ 45). At minimum, these allegations are probative of Plaintiff's use of inauthentic traffic on the Domains, and Plaintiff's scienter in doing so—both critical legal points. In turn, Request Two of the Subpoena directly seeks documents bearing on these allegations: Google's records of similar misconduct by Plaintiff elsewhere. Such documents are relevant.

Any denial that Plaintiff committed such misconduct elsewhere is a merits issue that does not support barring discovery. *Strike 3 Holdings, LLC v. Doe*, 2019 U.S. Dist. LEXIS 80905, at *4-5 (S.D.N.Y. May 14, 2019) (Wang, J.). And Plaintiff's lone mention of confidentiality should be disregarded as conclusory.

Accordingly, Request Two should not be quashed. We appreciate the Court's attention to this matter.

Respectfully,

/s/ Casey D. Laffey

cc: Erica Goldman, Esq. (*via ECF*)